## NEWPORT COUNTY.

15 603
15 630

———◆———

EDWARD W. HOWLAND *vs.* JULIUS A. PETTEY *et als.*

Land was levied on and sold at an execution sale as one lot. It was in fact divided by stone walls into six lots.

*Held*, immaterial; the land being accurately described and under one ownership.

The sale, after proper advertisement, took place at the sheriff's office, some twenty miles distant from the land.

*Held*, immaterial; the time and place being in the discretion of the officer, and he having acted in good faith in advertising and conducting the sale.

To satisfy the execution, a strip was sold from the side of the lot, but so that the portions sold and unsold both abutted on the highway.

*Held*, that the mode of sale was proper.

The execution debtor claimed the sale to be unfair, because an understanding that the land was redeemable on paying the debt and costs prevented a fair price being obtained.

*Held*, that he had no cause for complaint; it not appearing that the understanding was traceable to the officer or detrimental to the debtor, and it appearing that the debtor had refused to take the land back at the price paid with costs and expenses, that he delayed for five years to institute proceedings to annul the sale, and then made no offer to pay the amount of the judgment.

BILL IN EQUITY to set aside an execution sale of land.

*Providence, August* 2, 1887. STINESS, J.    In November, 1881, the complainant was the owner of a tract of land in Little Compton, on which an execution was levied in a suit against him by the collector of taxes of that town.    A portion of the land was sold under this levy in February, 1882, and the complainant now seeks to set aside that sale, upon the ground that it was improperly conducted.    The first ground of objection is that the land was advertised and sold as one lot, when in fact there were six lots, separated from each other by heavy stone walls.    If the entire tract was accurately described, and there is no suggestion to the contrary, we do not think that the sale was invalid on this account.    It was, in fact, one tract, under one ownership, and a description of the whole tract designates what land is to be sold.    The purpose of the notice is satisfied by such a description, for it points out the land to be sold, which is all that is required.    We do not see how the existence of stone walls on the land can affect the case.    It could hardly be contended that, in the sale of a farm, for instance, every field and pasture into which it might be divided should be separately described, when the description of the whole farm by outside boundaries was correctly given.

The next objection is that the sale took place at the sheriff's office in Newport, about twenty miles distant from the land itself. Sales of this character must be conducted with the utmost fairness, and due regard for the interests and rights of the parties to the suit.    When so conducted they will stand, whatever the pecuniary result may be.    Without doubt, in most cases, a sale on the premises is best calculated to draw together those who live in the vicinity, from whom competition may be expected, and thus

to secure the best price for the sale. But the law does not require this to be done. It requires the officer to give notice of the sale, leaving the time and place to be determined by him in the proper discharge of his duty. If, then, the law does not require a sale to take place on the premises sold, the question in this case is whether the sheriff's office, in view of its distance from the premises, is an improper place. We think it is not uncommon for execution sales to take place in the sheriff's office, and we are not prepared to say that this is improper. It is a public place, generably accessible; the place to which the debtor would go to redeem, and to which those who wanted to purchase would be likely to go to make inquiries about the sale. A place within the town might be nearer, and yet quite as difficult of access. But it is not to be assumed in all cases that the only bidders will be those who live near by. Others may desire to bid who can better attend a sale at the sheriff's office than on the premises, or in the particular town where the land lies. As the law does not require a sale to be at or near the premises, we do not see how we can require it, provided the officer acts in good faith in naming the place. In this case we do not doubt the good faith of the officer. He was disinterested as to the parties; he was an officer of long experience, and did what has frequently been done in sales of this kind. The sale was in winter, when it was less likely that bidders would go to examine land in the country, and when, with the present facilities for travel, there would be little difficulty in reaching the city of Newport. There is no evidence to show that anybody who wanted to attend the sale was prevented from doing so by reason of the distance. Moreover, it is of some significance that a notice of three months is required before the sale, which notice was brought to the complainant's attention by the officer at the outset, and yet, during all that time, he made no objection to the place of sale, and did not bring this bill to set the sale aside until more than five years had elapsed, and the property had passed from the purchaser into other hands. It appearing that the officer acted in good faith; that the place of sale, under the circumstances, was not an unreasonable place, nor one shown to have been injurious to the complainant; and that the selection of the place was not objected to during the three months preceding,

nor steps taken to set it aside for more than five years after the sale, — we do not see that the complainant makes a case for relief on this ground.

The next objection is that the sale was not properly conducted. The testimony does not show that the sale was conducted differently from other auction sales, or that it was conducted unfairly. The sheriff stated what land was to be sold, read the terms of sale, and an auctioneer of the city of Newport acted for him in selling. One lot was sold, which did not bring enough to satisfy the execution, but about which no question is made, and then so much of another lot, along its northerly side, as would be sufficient to satisfy the execution, was next sold. The complainant's contention is that the sale of a strip along the northerly side was an unfair mode of sale, and one calculated to depreciate the price. We do not see that this was so. Had the land been sold across the lot, at the rear end, it would have been cut off from the highway; or, if across the lot at the front, the land back of it would have been cut off from the highway; and either mode of sale might have involved controversies and litigation as to rights of way. As it was, both the land sold and the land remaining were accessible from the highway. We do not think the mode of sale was unfair or unreasonable, under the circumstances, even though, as is urged, it might result in considerable expense in building a long partition fence.

The complainant avers that the land did not bring an adequate price, because of an understanding by those present at the sale that he was to receive it back upon his paying the price paid and costs. " Generally, when a sale is set aside for inadequacy, etc., it will be on the principle of redemption, allowing the deed to stand as security for all money honestly advanced." *Aldrich* v. *Wilcox*, 10 R. I. 405, 417, and cases cited. The sheriff says he thinks this matter was spoken of, and that there was such an understanding among the attendants. There is no other proof. It is not shown that he had anything to do with it, or that he gave it currency at the sale. It was an auction sale, where all had an equal chance to bid. It had none of the ordinary marks of a fraudulent sale, such as unreasonable terms, misrepresentation, or trickishness. It does not appear that anybody refrained from bidding on

account of the understanding; but if he did, it was not for the purpose of taking advantage of the complainant, but it was rather in his favor, for it would enable him to regain his land simply for the price of the judgment and costs, for which he was liable. The understanding, if there was one, was not a mere pretence, fraudulently given out to deter persons from bidding, for after the sale the land was offered to the complainant by the purchaser, for the price paid, with costs and expenses, which offer he did not accept. No reason is given for the refusal to accept the offer, but it was not on account of inability to redeem; for he avers in the bill his ample ability to pay the amount of the debt. He has never offered, and does not even now offer, to redeem the land by paying the amount of the judgment against him, if the ownership of the land were such that this could now be done. The judgment against him having been satisfied, he here claims to retake the land without paying anything at all, either on the land or the judgment.

Before seeking equity he should do equity. By way of excuse for the delay in bringing his bill, the complainant states that the, officer told him that the sale was good for nothing and void. This the officer emphatically denies, and we do not doubt the correctness of his statement in this respect. A previous levy was made, which was informal, and of this the complainant was notified by the sheriff, who seemed to have taken great pains to inform him of the steps taken in this matter. After this lapse of time the complainant has probably confused the former levy with the one on which the sale was made. We do not think the complainant makes out a case for relief, and his bill must be dismissed, with costs.

*E. L. Barney & Charles A. Ives*, for complainant.

*William P. Sheffield & William P. Sheffield, Jun.*, for respondents.